PATRICK R. COSTELLO (FL Bar # 75034)
Securities and Exchange Commission
100 F Street NE
Washington, DC 20549-5949
Telephone: (202) 551-3982
Facsimile: (202) 772-9282
Email: costellop@sec.gov
*Admitted Pursuant to LR 83.1(c)(1)*

Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | CIVIL NO. |
| Plaintiff, | COMPLAINT |
| vs. | Jury Trial Demanded |
| SEMISUB, INC., CURTISS EDWARD JACKSON, and JAMEY DENISE JACKSON, | |
| Defendants. | |

Plaintiff Securities and Exchange Commission alleges:

I.      **INTRODUCTION**

1.      The Commission brings this action to enjoin Defendants from

violating the federal securities laws and for other relief.   From no later than January

- 1 -

2017 through at least February 2022, Defendants Curtiss Edward Jackson ("Curtiss") and Jamey Denise Jackson ("Denise") – acting through Defendant Semisub, Inc. ("Semisub") – misappropriated at least $1.5 million from investors in the company.  During that time period, Defendants raised approximately $4.7 million from over one hundred individuals in the United States through the offer and sale of securities in Semisub.   In connection with the offer and sale of those securities, Defendants engaged in a scheme to defraud investors, and also engaged in practices that operated as a fraud or deceit upon those investors.   In addition, Curtiss and Semisub repeatedly made untrue statements of material fact to those investors.

2.     Defendants solicited investments in the form of common stock, preferred shares and promissory notes, purportedly for the purpose of construction and operation of a partially submersible vessel that would be used for commercial sightseeing tours in Hawaii. Through offering documents and other communications, Defendants told investors their funds would be used to construct that vessel and then construct and market additional vessels to potential buyers.

3.     Notwithstanding these representations, however, Defendants misappropriated a significant portion of the funds raised to pay for their own personal expenses – including, among other things, a home rental in Hawaii, mortgage payments for a second home in California, car leases, clothing, haircuts,

nail salons, groceries, psychics and recreational drugs.   To perpetuate the fraud and solicit additional funds to support their extravagant spending, Defendants repeatedly lied to investors about the status of construction of the vessel and potential business relationships with reputable entities and organizations. To conceal the fraud, Defendants provided misleading financial information to investors.

4.     As a result of the conduct alleged in this Complaint, Defendants violated Section 17(a) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77q(a); and Section 10(b) and Rule 10b-5 of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5. Unless restrained and enjoined, Defendants are reasonably likely to continue to violate the federal securities laws.

5.     The Commission therefore respectfully requests the Court enter: (i) permanent injunctions restraining and enjoining Defendants from violating the federal securities laws alleged in this Complaint; (ii) an order directing Defendants to pay disgorgement with prejudgment interest on a joint and several basis; and (iii) an order directing each Defendant to pay a civil money penalty.

## II.   <u>DEFENDANTS</u>

6.     Curtiss, age 69, is a resident of Honolulu, Hawaii.  He is the founder of Semisub, and during the relevant time period, served as the chief executive

officer of the company.  In that capacity, he directed all aspects of the company's business, including its operations, online presence, communications with investors, and finances, and had control of the company's bank accounts.  He is married to Denise and was so during the relevant time period.  By virtue of his status as an officer and control person of Semisub, the actions he undertook as described more fully herein may be imputed to the company.   On or about November 5, 2009, the California Department of Corporations issued a desist-and-refrain order against Curtiss that, among other things: (i) ordered him to cease and desist from the offer or sale of securities in California; and (ii) determined that he made or caused to be made misrepresentations or omissions of material fact in connection with an offer or sale of securities in violation of section 25401 of the California Corporate Securities Law of 1968.

7.     Denise, age 58, is a resident of Lake Worth, Florida. During the relevant time period, she served as president of Semisub.  In that capacity, she directed all aspects of the company's business, including its operations, online presence, communications with investors, and finances, and had control of the company's bank accounts.  She is married to Curtiss and was so during the relevant time period.  By virtue of her status as an officer and control person of Semisub, the actions she undertook as described more fully herein may be imputed to the company.

8.     Semisub is a Nevada corporation with its principal place of business in Honolulu, Hawaii.  During the relevant time period, Curtiss and Denise served as its principal officers and control persons as described above.  The company was formed in 2009 as a successor to Semisub, Inc. CA ("Semisub CA") as part of a corporate restructuring as further described below.  From 2017 through February 2022 alone, at least 129 investors purchased at least $4.7 million in securities of Semisub.

## III.   **RELATED ENTITIES**

9.     Semisub LLC is organized in California and has a principal place of business in Honolulu, Hawaii.  During the relevant time period, it was managed by Semisub and was formed ostensibly to own and construct Semisub One ("Semisub One"), a partially submersible vessel that would be used for commercial sightseeing tours in Hawaii.  Registration records reveal, however, that at least as early as 2014, title of the vessel actually was held by Semisub.  During the relevant time period, Curtiss and Denise were members and served as the control persons of Semisub LLC.  On or about November 5, 2009, the California Department of Corporations issued a desist-and-refrain order against Semisub LLC that, among other things, ordered it to cease and desist from the offer or sale of securities in California.

10.     Semisub CA was a California corporation with its last principal place of business in Honolulu, Hawaii.  Curtiss was the founder of Semisub CA and

served as its chief executive officer.  On or about November 5, 2009, the California Department of Corporations issued a desist-and-refrain order against Semisub CA that, among other things: (i) ordered it to cease and desist from the offer or sale of securities in California; and (ii) determined that it made or caused to be made misrepresentations or omissions of material fact in connection with an offer or sale of securities in violation of section 25401 of the California Corporate Securities Law of 1968.  Semisub CA thereafter underwent a restructuring and transferred all of its assets to Semisub.  Semisub CA's registration ultimately was suspended by the California Secretary of State in 2019.

## IV.   **JURISDICTION AND VENUE**

11.    The Court has subject matter jurisdiction over this action pursuant to Sections 20(b), 20(d) and 22(a) of the Securities Act, 15 U.S.C. §§ 77t(b), 77t(d) and 77v(a); and Sections 21(d) and 27(a) of the Exchange Act, 15 U.S.C. §§ 78u(d) and 78aa(a).

12.    The Court has personal jurisdiction over Defendants and venue is proper in this District pursuant to Section 22(a) of the Securities Act, 15 U.S.C. § 77v(a), and Section 27(a) of the Exchange Act, 15 U.S.C. § 78aa(a), because, among other things, Curtiss resides in this District; Semisub has its principal place of business in this District; and some or all of the acts and transactions in which Defendants engaged and that constitute violations of the federal securities laws

occurred in this District.

13.     In connection with the conduct alleged in this Complaint, Defendants, directly and indirectly, singly or in concert with others, have made use of the means or instrumentalities of interstate commerce, the means or instruments of transportation or communication in interstate commerce, the mails, and/or the facilities of a national securities exchange – namely, through Defendants' use of the Internet and email correspondence when conducting the acts and transactions described herein.

## V.     FACTUAL BACKGROUND

### A.     Formation of Semisub

14.     Curtiss formed Semisub CA and Semisub LLC in California in 2003 with the stated purpose of constructing and later operating a partially submersible vessel for tourism.  Semisub One was marketed to investors as a catamaran-style boat with windows that would be fully submerged underwater for better viewing.

15.     In 2005, Curtiss began raising funds from investors by selling membership interests in Semisub LLC, and a year later, by selling shares in Semisub CA.  In 2009, the California Department of Corporations issued the desist-and-refrain orders described above against both entities and Curtiss. Shortly thereafter, Curtiss formed Semisub as a Nevada corporation. The offering documents for Semisub described, among other things, the restructuring of Semisub

CA and the transfer of its assets to Semisub.  Defendants operated Semisub in California until November 2010, at which point they relocated the company to Hawaii, where it currently is based.[1]

16.    For years, Defendants solicited investments, assuring investors Semisub One was under construction and would soon be ready.  As described more fully below, however, the boat was not legally operable until July 2019 when Defendants finally obtained a certificate of inspection for Semisub One from the U.S. Coast Guard ("USCG").  Months later, the boat was shut down by the USCG as a result of problems with its engine, and Semisub ceased operations entirely in March 2020 at the beginning of the Covid-19 pandemic.  On or about February 1, 2022, Curtiss emailed investors and stated Semisub planned to reopen within the next few months.

### B.    Defendants Offer and Sell Securities in Semisub

17.    Given that Semisub One only operated for a few months, Semisub's main source of funding was money raised from investors through the sale of securities.

18.    Between January 2017 and February 2022, Defendants raised approximately $4.7 million from investors in Semisub.  Sales of securities during

---

[1]    While Defendants solicited investments relating to Semisub One beginning in 2005, this Complaint concerns only the time period of 2017 to the present.

this period consisted mainly of: (i) contacting existing investors by email directly through periodic investor updates and requesting additional funds in exchange for more shares; (ii) selling shares to new investors typically based on referrals from existing investors; and (iii) using promoters to secure investments from new or existing investors in exchange for payment of commissions.

19.     Throughout the relevant time period, the primary offering document Defendants provided to investors was a private placement memorandum ("PPM") initially created in December 2009.  Defendants provided the PPM to investors through third-party shipping and mailing services like UPS.  Semisub reused the PPM in its solicitation of funds throughout the relevant time period.  In a number of instances, Semisub added executive summaries, which consisted of several pages concerning the specific terms of that offering, and attached the PPM as an exhibit. On other occasions, Defendants did not provide the PPM to investors, but rather only a subscription agreement attached to an email and referencing the PPM – and at times, only the signature page for the subscription agreement was sent.

20.     The PPM and executive summaries stated, among other things, that investor funds paid to Semisub would be used to make loans to Semisub LLC for the purpose of completing the construction and subsequent operation of Semisub One, and that the loans would bear an annual interest rate of 10%.

21.     To attract investors, Semisub frequently promised that construction of

Semisub One would be completed shortly and that operations would commence imminently, but that additional funds were required in order to bring Semisub One over the finish line.  In addition, investors were told Semisub's plan was to transition its business to the construction and sale of a fleet of additional vessels around the world for tens of millions of dollars per vessel.  For example, Curtiss sent emails to investors stating:

- **November 16 and 26, 2018**: "[T]he construction of Semisub One is complete" and "We will be putting out a new raise of one million shares, [sic] to accelerate the sales and marketing, this will be open to new investors at one dollar fifty Cents [sic].  I have been asked by some partners to let them know when we will close out this round well I am letting you know, twenty five cent shares will close in the next two weeks so we can start the new investors round at $1.50 per share, you can't have two offerings open at the same time."

- **April 1, 2019**: "We are at the finish line…. We have a date to haul out <u>on April 8th</u> and will be Coast Guard inspected and go back in water on <u>April 11th</u> and get our COI. We have everything else in place to go into operation….I am requesting that everyone that can increase there [sic] position buy [sic] $1,000 to $2,000 to get us over this last hump and have a great grand opening." (emphasis in original).

- **January 3, 2020**: "To fund our burn rate until we hit the break even anticipated in the next 30-45 days and the new construction start up costs we need to raise $500,000.  For this last push we are offering shares at **.05 cents our lowest price ever**, with the goal *I* need to raise $500,000." (emphasis in original).

- **July 12, 2021**: "Semisub is finally going back into operation…. Currently, we are in need [sic] help financially to get through next 30 days.  Most of the companies that Book us are on a net 30 program. Unfortunately, payroll and catering and other

essentials still need to be taken care of, if you can assist us in anyway, please help us get over this hump, please contact me ASAP Curtiss Jackson…."

22.     Denise, as president of Semisub, sent offering materials, subscription agreements and stock certificates to investors by mail, and communicated with them by phone and email concerning their investments.  She also maintained records regarding investments, managed the books and bank accounts of Semisub, and participated in the preparation and review of investor update emails, with Curtiss often dictating the contents to her directly or providing a dictation made on his phone.

## C.     Defendants Misappropriate a Significant Amount of the Funds Raised and then Conceal the Fraud from Investors

23.     Despite the representations in the PPM and executive summaries, Semisub did not make any formal loans to Semisub LLC and the latter did not pay interest on any such loans to Semisub.  Rather, investor funds remained in bank accounts held by Semisub over which Curtiss and Denise exercised control. Defendants therefore knew, or were reckless in not knowing, investor funds were not being used for the stated purpose of providing interest-bearing loans to Semisub LLC.

24.     Moreover, beginning at least as early as January 2017 and continuing through at least February 2022, Curtiss and Denise accessed Semisub's bank

accounts and spent approximately one third of the $4.7 million raised from investors on their own personal expenses unrelated to the construction and operation of Semisub One or any of the purported additional vessels. These expenses include, but are not limited to: (i) approximately $8,500 per month in rent for their residence in Hawaii; (ii) approximately $2,300 per month to pay the mortgage on their home in California while they were living in Hawaii; (iii) approximately $1,400 per month for car leases, including a Mercedes for Curtiss; (iv) approximately $27,000 per year on food and groceries; (v) approximately $23,000 in personal retail expenses, including clothing, haircuts, and visits to nail salons; (vi) over $167,000 in personal credit card bills; and (v) over $200,000 in cash used for such activities as psychics and recreational drugs.  In addition to these expenditures, Semisub paid Denise an annual salary of approximately $150,000 from at least September 2017 through March 2020.

25.    As officers of Semisub, and given their control over Semisub's bank accounts, Curtiss and Denise knew, or were reckless in not knowing, they were personally enriching themselves at the expense of investors, and that a substantial portion of investor funds was not being used for the stated purpose of completing the construction and subsequent operation of Semisub One.

26.    In addition, given their marital status and control over Semisub's operations and bank accounts, Curtiss and Denise effectively acted as partners in

the misappropriation of investor funds.  They engaged in concerted wrongdoing to benefit themselves substantially and defraud investors.   Moreover, neither Curtiss nor Denise was a mere passive recipient of investor funds.  Rather, both took affirmative steps to misappropriate investor money and enjoyed the fruits of their fraud, living comfortably on funds to which they were not entitled.

27.     In order to conceal the misappropriation of funds and perpetuate their fraud, Defendants routinely refused to provide financial information to investors when requested.  For example, on or about November 17, 2018, one investor emailed Semisub inquiring as to why she had not received an invite to participate in an investor update conference call.  In her response email, Denise accused the unwitting investor of being part of a group of investors who allegedly made negative accusations against the company to a newspaper. Denise stated in reference to the accusations: "That's why we have not updated you all.  There will still be consequences to come, due to that alone."

28.     On another occasion, on or about February 26, 2018, an investor emailed Curtiss:

> [We] investors want the accounting of all monies and clear supervision of future income and expenses, not to mention distribution of profits. It's a ridiculous fact that Curtis's [sic] have never provided this already.

Curtiss responded subsequently by email:

> We have a third party accounting firm! If you think we are living like kings you are nuts! We work are [sic] ass off and rest all weekend we

go to church on Sunday! My big thing for the weak [sic] is NASCAR on Sunday! We have not been on a vacation in 10 years! You have some nerve!

29.     Despite representing otherwise, Curtiss and Denise in fact had used investor funds for vacations and other travel-related expenses on trips to, among other places, California, the Big Island in Hawaii, and Disney.

30.     In another instance, on or about November 11, 2017, Curtiss emailed Semisub's general manager instructing him not to respond to an investor who asked for financial statements and when investors could expect a return on their investment because it was "none of his bis [sic]."

31.     When Defendants did, on occasion, provide limited financial information to investors by way of *pro formas* describing expected future operating costs and profits, those documents were misleading and omitted any reference to Curtiss or Denise using investor funds for their own personal benefit.

32.     For example, *pro formas* sent to investors during the relevant time period purported to present Semisub's expenses, including, among other things, employee salaries, office rental, utilities, and vessel operation costs, but did not include amounts Curtiss and Denise spent on themselves, such as Denise's salary and benefits, the monthly rent and utilities for their residence, their car lease payments or their auto insurance premiums.  Nevertheless, a subsequent internal *pro forma* from 2020, which never appears to have been sent to investors, contained

a separate "Corp Expenses" section that delineated amounts for per diem payments to Curtiss and Denise, corporate housing lease and utilities, Mercedes lease, Honda lease, and auto insurance. This internal *pro forma* also reflected Denise's compensation in the form of an annual salary of $150,000 and benefits of $33,000. These "Corp Expenses" and compensation and benefit payments to Denise all were amounts Defendants had been incurring during the time when the misleading *pro formas* were sent to investors.   Defendants therefore knew, or were reckless in not knowing, the financial information being provided to investors was misleading.

33.    To round out their concealment of the misappropriation, Curtiss and Denise also failed to disclose to the Internal Revenue Service any of the amounts they used for personal expenses as income on their tax returns.

## D.    Curtiss and Semisub Made Materially False and Misleading Statements to Investors

34.    As part of the fraud, Curtiss and Semisub routinely made false and misleading statements to investors in order to solicit additional funds that would be used to support Curtiss's and Denise's lifestyle.

### (1)    Use of Investor Funds

35.    As alleged above, the PPM and executive summaries stated, among other things, that investor funds paid to Semisub would be used to make loans to Semisub LLC for the purpose of completing the construction and then subsequent

operation of Semisub One.

36.     In addition, when Curtiss and Semisub solicited funds from investors, those requests ostensibly would be tied to specific needs of the business.   For example, as described above, on November 16 and 26, 2018, Curtiss emailed investors on behalf of Semisub seeking additional funds "to accelerate the sales and marketing" of the company.   On April 1, 2019, Curtiss emailed investors on behalf of Semisub requesting more funds for Semisub "to get over this last hump and have a great grand opening."   Later, on January 3, 2020, Curtiss emailed investors on behalf of Semisub because the company purportedly needed funds "[t]o fund our burn rate until we hit the break even . . . and the new construction start up costs." And on July 12, 2021, Curtiss emailed investors on behalf of Semisub advising them the company was going back into operation and "need[ed] help financially to get through next 30 days" citing specific items such as payroll and catering costs.

37.     Each time Semisub and Curtiss provided the PPM and/or executive summaries to investors, Curtiss knew, or was reckless in not knowing, the statements in those documents regarding the use of investor funds were false and misleading, both because (i) no investor funds were being loaned to Semisub LLC, and (ii) he and Denise had been misappropriating a substantial portion of those funds for their own personal benefit.

38.     In addition, at the time that he sent the above-described emails to

investors, Curtiss knew, or was reckless in not knowing, the statements in those emails were false and misleading because he and Denise (i) had been misappropriating a substantial portion of investor funds to pay for personal expenses; and (ii) had concealed the misappropriation from investors as described above, including by providing inaccurate, incomplete, and misleading *pro formas*.

39.     These statements were material because a reasonable investor would expect his or her funds to be used for the stated purpose of completing the construction and subsequent operation of Semisub One, and the fact that funds instead were being used to fuel personal spending would have been important to his or her investment decision.

### (2)    Business Partnerships

40.     From the outset, Curtiss and Semisub told investors the company's true profitability would come from the construction and sale of additional vessels beyond Semisub One, by way of partnerships or joint ventures with other businesses.  Indeed, the PPM itself states in pertinent part: "The principal purposes for this offering are to increase our working capital to enable us to make additional loans to Semisub LLC to complete construction and delivery of [Semisub One], and to market Vessels to other potential buyers."  The PPM goes on to note that "[t]he business of constructing and selling new Vessels for commercial or government use will also be launched by the Company."  In soliciting additional

funds from investors, Curtiss repeatedly misrepresented the existence of these partnerships and joint ventures.

41.    For example, in email updates on June 8, 2017 and August 8, 2017, Curtiss told investors that Semisub, in conjunction with Viking Systems ("Viking"), a marine engineering firm, was working on two specially-designed ships to be used by the Department of Homeland Security ("DHS") and an organization called Marine Biology Studies ("MBS").  These statements were false, however, because DHS did not have any relationship with Semisub, Viking had not done any work on any designs for DHS or MBS vessels, and Semisub had not had any discussions or entered into any agreements with DHS or MBS.  Curtiss knew, or was reckless in not knowing, these statements were false because he had not had any communications with either DHS or MBS about any such relationship with Semisub.

42.    Similarly, in email updates on February 26, 2018, November 13, 2018 and November 26, 2018, Curtiss repeatedly told investors Semisub would enter into a joint venture with a private equity fund to operate additional vessels.  During investor calls on April 4, 2019 and April 5, 2019, he identified BlackRock, a private equity fund, as a potential business partner, and told investors BlackRock was interested in investing in Semisub.  These statements were false, however, because BlackRock did not have any relationship with Semisub.  Curtiss knew, or was

reckless in not knowing, these statements were false because he had not had any communications with BlackRock about any such investment.

43.     These statements were material because a reasonable investor would have expected Semisub to be engaged in the very activity described in the PPM (*i.e.*, building, selling, and marketing additional vessels) and to be engaged in the ventures and partnerships that Curtiss described, and would have considered it important to his or her investment decision to know that, in fact, Semisub was not building, marketing, or selling additional vessels and had not entered into any such ventures or partnerships.

### (3)    Status of Semisub One and the Company

44.     Curtiss and Semisub routinely made false statements to investors about the status of Semisub One and the company, all in an effort to keep investor funds flowing into the company's bank accounts.

45.     In fact, from the very beginning, Curtiss misrepresented the status of the vessel.  The 2009 PPM itself states in pertinent part: "We have completed the hull and major structural components of [Semisub One], and estimate that approximately 90% of the construction of [Semisub One] has so far been completed."  That statement was false, however, because by 2017 (eight years later), Semisub One still was not complete or even operational.  Indeed, on December 1, 2017, Curtiss emailed investors and said: "We are looking at a

completion date towards the end of December and the COI [Certificate of Inspection] sooner."  In reality, Semisub did not receive a COI until July 2019 and tours did not begin until November 2019.

46.     Throughout the relevant time period, Curtiss and Semisub continued to misrepresent the status of Semisub One.  For example, on August 23, 2018, Curtiss emailed an update to investors and said: "We intend to have a soft opening within the next three weeks and will schedule a celebration and grand opening approximately 30 days after that."

47.     At the time he sent this email, however, Curtiss knew, or was reckless in not knowing, this timing would not be possible.  Semisub had only submitted its electrical drawings to the USCG for approval a few weeks earlier on August 3, 2018.  In addition, on August 15, 2018, Curtiss received an email from a USCG employee stating she hoped to *start* her review on August 17 and explaining the USCG would have 30 days to review the submission.  Curtiss also knew, or was reckless in not knowing, that after receiving approval for the drawings, Semisub then would need to have the electrical system physically inspected and approved by the local USCG office.

48.     On November 13, 2018, Curtiss sent another email update to investors stating that "I am happy to let you know that Semisub One is completed.  We intend to put Semisub One into operations by the end of this month…."  On conference

calls with investors approximately one week later, Curtiss asked investors to contribute more money to the company as part of a closing offering and/or a forthcoming offering.

49.     Despite these representations to investors, Curtiss knew, or was reckless in not knowing, that Semisub One was not completed and would not be put into operation shortly.   Indeed, just two weeks before that November 13 email, Curtiss received a letter from the USCG on October 29, 2018, requiring Semisub to retain a licensed professional engineer to verify the boat was being built in accordance with USCG approved plans as a result of having prior repeated failed inspections.  The letter stated in pertinent part:

> Prior to my inspectors attending your vessel, I am requiring that you provide written attestation from a licensed Professional Engineer verifying that the vessel is built and all systems installed in accordance with U.S. Coast Guard approved plans. Since June 2017, marine inspectors have attended your vessel 38 times for vessel plan verification.   Each time the inspectors provided a detailed list of discrepancies found on the vessel.   Further, numerous visits to the vessel highlighted that local installations on the vessel did not match U.S. Coast Guard approved plans.   As recent as October 9, 2018, inspectors from my office attended your vessel and provided you with a list of discrepancies regarding the AC/DC electrical installation on board the vessel.   Marine inspectors found the local installation did not match the recently revised drawings approved by the U.S. Coast Guard Marine Safety Center.

50.     In early April 2019, in an email update and conference calls with investors, Curtiss said: "We are at the finish line….We have everything else in place to go into operation," and that Semisub would be going into operation by May

1, 2019.  He also indicated only a single repair needed to be made to the boat.  At the same time, he continued to solicit additional investments: "I am requesting that everyone that can increase there [sic] position buy [sic] $1,000 to $2,000 to get us over this last hump and have a great grand opening."

51.     In fact, Curtiss knew, or was reckless in not knowing, his statements about the status of the boat were false.  Throughout the month of March 2019, Semisub repeatedly failed inspections and received several reports from the USCG regarding deficiencies that needed to be fixed.  As late as March 29, 2019, the USCG sent Curtiss a then-current written worklist, which contained 40 such deficiencies.

52.     These ongoing statements about the status of Semisub One were material because a reasonable investor would have considered the fact that Curtiss and the company had failed to make good on their timeline to be important to his or her investment decision, and would not have expected the reality surrounding the construction and operation of the boat to be the complete opposite of what Curtiss portrayed.

## COUNT I

## Fraud in Violation of Section 17(a)(1) of the Securities Act

### (Against all Defendants)

53.     The Commission repeats and realleges Paragraphs 1 through 52 of its

Complaint.

54.     Defendants, in the offer or sale of securities by the use of the means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly knowingly or recklessly, employed a device, scheme or artifice to defraud.

55.     By reason of the foregoing, Defendants violated, and, unless enjoined, are reasonably likely to continue to violate, Section 17(a)(1) of the Securities Act, 15 U.S.C. § 77q(a)(1).

## COUNT II

## Fraud in Violation of Section 17(a)(2) of the Securities Act

### (Against Semisub and Curtiss)

56.     The Commission repeats and realleges Paragraphs 1 through 52 of its Complaint.

57.     Defendants, in the offer or sale of securities by the use of the means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly knowingly, recklessly, or negligently obtained money or property by means of an untrue statement of a material fact or an omission to state a material fact necessary to make the statements made, in the light of the circumstances under which they were made, not misleading.

58.     By reason of the foregoing, Defendants violated, and, unless enjoined,

are reasonably likely to continue to violate, Section 17(a)(2) of the Securities Act, 15 U.S.C. § 77q(a)(2).

## COUNT III

### Fraud in Violation of Section 17(a)(3) of the Securities Act

### (Against all Defendants)

59.     The Commission repeats and realleges Paragraphs 1 through 52 of its Complaint.

60.     Defendants, in the offer or sale of securities by the use of the means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly knowingly, recklessly, or negligently engaged in a transaction, practice or course of business which operated or would operate as a fraud or deceit upon the purchaser of such securities.

61.     By reason of the foregoing, Defendants violated, and, unless enjoined, are reasonably likely to continue to violate, Section 17(a)(3) of the Securities Act, 15 U.S.C. § 77q(a)(3).

## COUNT IV

### Fraud in Violation of Section 10(b) and Rule 10b-5(a) of the Exchange Act

### (Against all Defendants)

62.     The Commission repeats and realleges Paragraphs 1 through 52 of its Complaint.

63.     Defendants directly or indirectly, by the use of the means or instrumentalities of interstate commerce, or of the mails, knowingly or recklessly employed a device, scheme or artifice to defraud, in connection with the purchase or sale of securities.

64.     By reason of the foregoing, Defendants violated, and, unless enjoined, are reasonably likely to continue to violate, Section 10(b) and Rule 10b-5(a) of the Exchange Act, 15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5(a).

## COUNT V

## Fraud in Violation of Section 10(b) and Rule 10b-5(b) of the Exchange Act

### (Against Semisub and Curtiss)

65.     The Commission repeats and realleges Paragraphs 1 through 52 of its Complaint.

66.     Defendants directly or indirectly, by the use of the means or instrumentalities of interstate commerce, or of the mails, knowingly or recklessly made untrue statements of material fact or omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, in connection with the purchase or sale of securities.

67.     By reason of the foregoing, Defendants violated, and, unless enjoined, are reasonably likely to continue to violate, Section 10(b) and Rule 10b-5(b) of the

Exchange Act, 15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5(b).

## COUNT VI

## Fraud in Violation of Section 10(b) and Rule 10b-5(c) of the Exchange Act

### (Against all Defendants)

68.     The Commission repeats and realleges Paragraphs 1 through 52 of its Complaint.

69.     Defendants directly or indirectly, by the use of the means or instrumentalities of interstate commerce, or of the mails, knowingly or recklessly engaged in an act, practice or course of business which operated or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of securities.

70.     By reason of the foregoing, Defendants violated, and, unless enjoined, are reasonably likely to continue to violate, Section 10(b) and Rule 10b-5(c) of the Exchange Act, 15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5(c).

## RELIEF REQUESTED

**WHEREFORE**, the Commission respectfully requests the Court find that Defendants committed the violations charged and that, as a result of these violations, Defendants received ill-gotten gains; and enter final judgments:

## I.

## **Permanent Injunctions**

Permanently restraining and enjoining Defendants, their officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, and each of them, from directly or indirectly violating the federal securities laws alleged in this Complaint, pursuant to Section 20(b) of the Securities Act, 15 U.S.C. § 77t(b); and Section 21(d)(1) of the Exchange Act, 15 U.S.C. § 78u(d)(1).

## II.

## **Disgorgement**

Ordering Defendants to disgorge on a joint and several basis, with prejudgment interest, the net profits they received from their ill-gotten gains as a result of the acts or courses of conduct alleged in this Complaint, pursuant to Sections 21(d)(5) and (d)(7) of the Exchange Act, 15 U.S.C. §§ 78u(d)(5), (7).

## III.

## **Penalties**

Ordering each Defendant to pay a civil money penalty pursuant to Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d); and Section 21(d)(3) of the Exchange Act, 15 U.S.C. § 78u(d)(3).

## IV.

## **Further Relief**

Granting such other and further relief as the Court determines to be necessary and appropriate.

## V.

## **Retention of Jurisdiction**

Further, the Commission respectfully requests the Court retain jurisdiction over this action and over Defendants in order to implement and carry out the terms of all orders and decrees that may hereby be entered, or to entertain any suitable application or motion by the Commission for additional relief within the jurisdiction of this Court.

## **JURY DEMAND**

The Commission demands a trial by jury as to all claims so triable.


DATED:  August 3, 2022                   Respectfully submitted,

Washington, DC                           SECURITIES AND EXCHANGE
                                         COMMISSION

                                         By:   /s/ Patrick R. Costello

                                               Patrick R. Costello
                                               Attorney for Plaintiff
                                               Email: costellop@sec.gov